UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATURAL RESOURCES DEFENSE COUNCIL,

            Plaintiff,

            -v-

U.S. ENVIRONMENTAL PROTECTION AGENCY,

            Defendant.

17 Civ. 5928 (JMF)

---

**DEFENDANT U.S. ENVIRONMENTAL PROTECTION AGENCY'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
SECOND MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
Fax: (212) 637-2686
tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney
*Of Counsel*

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

    A.    Documents 26339 and 10238 Are Predecisional, Deliberative "Messaging" Records That Should Be Set Aside Pending a Resolution of EPA's Second Circuit Appeal ..................................................................................1

    B.    Documents 26339 and 10238 are Predecisional and Deliberative ..........................3

    C.    Documents 1370 and 6761 Are Predecisional and Deliberative .............................5

    D.    Document 14043 Contains Protected Deliberations About a Core Agency Decision ..................................................................................................................7

    E.    EPA Has Demonstrated Harms From Disclosure ....................................................8

    F.    NRDC Is Not Entitled to *In Camera* Review of the Challenged Records ...............9

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

Cases

*Assadi v. USCIS*,
  12 Civ. 1374 (RLE), 2015 WL 1500254 (S.D.N.Y. Mar. 31, 2016) ......................................... 10

*Doherty v. U.S. Department of Justice*,
  775 F.2d 49 (2d Cir. 1985) ................................................................................................. 9, 10

*Grand Central Partnership, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ............................................................................................... 6, 10

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) ..................................................................................................... 9

*Judicial Watch, Inc. v. U.S. Department of Energy*,
  310 F. Supp. 2d 271 (D.D.C. 2004) .......................................................................................... 4

*Maritel, Inc. v. Collins*,
  422 F. Supp. 2d 188 (D.D.C. 2006) ..................................................................................... 7, 8

*New York Times Company v. FCC*,
  __ F. Supp. 3d __, 2020 WL 2097623 (S.D.N.Y. 2020) ........................................................... 7

*NRDC v. EPA*,
  676 F. Supp. 2d 307 (S.D.N.Y. 2009) ....................................................................................... 7

*Tigue v. U.S. Department of Justice*,
  312 F.3d 70 (2d Cir. 2002) .................................................................................................. 3, 5

*Williams v. FBI*,
  69 F.3d 1155 (D.C. Cir. 1995) .............................................................................................. 1, 3

Statutes

5 U.S.C. § 553(b) ............................................................................................................................ 7

Defendant U.S. Environmental Protection Agency (the "EPA"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its second motion for summary judgment and in opposition to plaintiff Natural Resources Defense Council's ("NRDC") cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## ARGUMENT

NRDC's arguments in opposition to EPA's summary judgment motion ignore EPA's *Vaughn* submissions which articulate the agency's justifications for its Exemption 5 withholdings. Instead, NRDC relies on selectively quoted statements in EPA's *Vaughn* index to suggest that EPA has not justified its withholdings. "Summary judgment may be granted based on agency affidavits if 'they contain reasonable specificity of detail rather than mere conclusory statements, and if they are not called into question by contradictory evidence in the record of by evidence of agency bad faith.'" *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal citations omitted). EPA's *Vaughn* submissions have met that burden, and NRDC has not cited contradictory evidence in the record or evidence of agency bad faith that would otherwise call into question the agency's detailed *Vaughn* submissions. For the same reasons, this Court should deny NRDC's request for *in camera* review of all of the challenged records.

**A.    Documents 26339 and 10238 Are Predecisional, Deliberative "Messaging" Records That Should Be Set Aside Pending a Resolution of EPA's Second Circuit Appeal**

Although EPA's opening brief explained how Documents 26339 and 10238 are analogous to other records that are the subject of its Second Circuit appeal on "messaging" records, *see* Def.'s Mem. of Law in Support of Its Second Mot. for Summ. J., dated April 8, 2020 ("Def.'s Br.") [Dkt. No. 91], at 10–12; *see also* Declaration of Pamela S. Myrick, dated April 8, 2020 ("Myrick Decl.") [Dkt. No. 92], ¶¶ 17, 19; *id.* Ex. 7, at 1, n.1, 3 n.2, NRDC nonetheless

asserts that this Court should reject EPA's request to set them aside until the appeal is decided. *See* Mem. of Law in Support of Pl.'s Cross-Mot. for Summ. J., dated May 4, 2020 ("Pl.'s Br.") [Dkt. No. 94], at 13. NRDC proffers no evidence that EPA is deliberately "delay[ing] the disclosure of the records by forcing them into the 'messaging' category," Pl.'s Br. at 13, despite EPA's explanation that these two records were initially omitted as "messaging" records because of an oversight. Myrick Decl. Ex. 7, at 1 n.1, 3 n.2.

Moreover, NRDC mischaracterizes EPA's description of these records. First, NRDC erroneously asserts that EPA described Document 26339 as merely "draft briefing materials." *See* Pl.'s Br. at 13. EPA's *Vaughn* submissions, however, make clear that this record contains "briefing materials" created on May 10, 2017, "for a meeting between the Chemours Company and then EPA Administrator Scott Pruitt on May 15, 2017," which included staff "views and advice . . . to inform the Administrator's decision on how to approach the upcoming meeting." Myrick Decl. Ex. 7, at 12. EPA anticipated that the meeting would likely involve public discussions about the Toxic Substances Control Act ("TSCA") Framework Rules "which EPA was working to finalize but had not completed." *Id.* at 2. NRDC fails to explain how EPA's description of Document 26339 is materially different than Document 5427, which was similarly "created to help prepare the EPA Administrator for meetings with an industry group," and which the Court held was a "messaging decision." *See* Opinion and Order dated August 30, 2019 ("August 30 Order") at 23–24, n.9.

NRDC also mischaracterizes EPA's *Vaughn* description for Document 10238 as an email chain "concerning preparation for a Congressional budget hearing." Pl.'s Br. at 3 (citing Myrick Decl. Ex. 7, at 3). According to EPA's *Vaughn* submissions, Document 10238 "contained internal deliberations about how to prepare the Administrator for questions regarding the

2

implementation of the newly-finalized TSCA Framework Rules at an upcoming Congressional hearing." Myrick Decl. ¶ 19. These emails "discuss potential options for responding to questions concerning the TSCA Framework Rules at a hearing which had not yet taken place," and "reflects information, recommendations and opinions that were considered as part of the Agency's overall decisionmaking process for how to provide Congress with information at the upcoming budget hearing." *Id.* Ex. 7, at 4. Again, NRDC does not explain how Document 10238 is materially different than records "concern[ing] how the EPA should respond to questions . . . from members of Congress," and "decisions on how to respond to congressional inquiry about agency policy." *See* Opinion and Order dated August 30, 2019 ("August 30 Order"), at 20–21.

**B.     Documents 26339 and 10238 are Predecisional and Deliberative**

If the Court chooses to address the privileged nature of these messaging records notwithstanding EPA's pending appeal, NRDC has failed to demonstrate that these documents are not predecisional or deliberative. As described above, Document 26339 concerned the not-yet-finalized TSCA Framework Rules, was developed to assist EPA senior management prepare for a meeting with an outside entity and reflected staff views and advice about the stakeholders' anticipated positions on issues relevant to the rulemaking. Myrick Decl. Ex. 7, at 1–2. Contrary to NRDC's assertions, these deliberations directly implicated the "formulation or exercise of policy-oriented judgment." Pl.'s Br. at 11–12 (quoting *Tigue v. U.S. Department of Justice*, 312 F.3d 70, 80 (2d Cir. 2002)). In addition, NRDC incorrectly claims that EPA failed to show how Document 26339 is predecisional or deliberative, because EPA purportedly made "significant and substantive modifications to the entry for Document No. 26339 in the 'draft' Vaughn index it provided to NRDC." Pl.'s Br. 12, *see also* Declaration of Sarah Tallman dated May 4, 2020 ("Tallman Decl."), at Ex. 3 [Docket No. 95-3]. EPA's willingness to provide a draft *Vaughn*

3

index as "an appropriate next step to facilitate the parties' ongoing attempt to resolve or narrow remaining issues in the case" is irrelevant to the privileged status of the document. Joint Letter dated Jan. 27, 2020 [Dkt. No. 82], at 3–4. NRDC was also on notice that a draft *Vaughn* index could be subject to amendment or supplementation before filing, and that a final index could differ from the draft by "reflect[ing] inclusion of additional factual support by the agency to address areas of concern identified by the plaintiff during the conferral process, not wholesale material changes to the entries." *Id.* at 4. Over NRDC's objection, this Court permitted EPA to provide a draft *Vaughn* index rather than a final one. *See* Order dated February 4, 2020 [Dkt. No. 85], at 5. NRDC's argument inappropriately draws substantive conclusions about a document's contents from EPA's willingness to narrow the issues and provide more information and does not contradict EPA's affidavits.[1]

The withheld portions of Document 10238 similarly reflect predecisional deliberations that are protected under Exemption 5. And although NRDC dismisses Document 10238 as merely an email chain "concerning preparation for a Congressional budget hearing," Pl.'s Br. at 11, Document 10238 reflected information, recommendations and opinions regarding what kind of information to provide Congress about EPA's ongoing implementation of the TSCA Framework Rules, and included "substantive discussion of the implementation" of those rules.

---

[1] NRDC also argues that EPA waived any privilege over Document 26339 when it voluntarily disclosed Document 8563 on March 10, 2020 after listing that record in its draft *Vaughn* index. Pl.'s Br. at 12 (citing Tallman Decl. Ex. 3, at 9; Myrick Decl. Ex. 3). However, Document 8563 and 26339 are different documents with different purposes. Document 8563 is weekly report issued by OCSPP on July 6, 2017. *See* Declaration of Tomoko Onozawa, dated June 5, 2020, Ex. 1. This weekly report is a summary of subject-matter topics which, among other things, reports the upcoming publication of a final registration decision and notes that stakeholder groups "may have concerns about this action." *See id.* at 1. Document 26339 is a draft document developed to help the Administrator prepare for a meeting with an outside party and contained internal views and advice that were offered to inform the Administrator on how to approach this meeting. Myrick Decl. Ex. 7, at 1–2.

4

Myrick Decl. Ex. 7, at 3–4.  *See Judicial Watch, Inc. v. U.S. Department of Energy*, 310 F. Supp. 2d 271, 327 (D.D.C. 2004), *aff'd in part, rev'd in part and remanded on other grounds by* 412 F.3d 125 (D.C. Cir. 2005) ("If the withheld documents can be accurately characterized as 'deliberative' with respect to an identifiable future agency decision involving implementation, they are exempt under Exemption 5").

### C.     Documents 1370 and 6761 Are Predecisional and Deliberative

As described in EPA's *Vaughn* submissions, Document 1370 is a July 27, 2017 email chain discussing academic literature that may inform decisionmaking concerning ongoing chlorpyrifos registration review.  Myrick Decl. ¶ 24 & Ex. 7, at 4–5.  NRDC asserts that it was not enough for EPA to represent that Document 1370 was "relevant to ongoing discussions concerning chlorpyrifos," Pl.'s Br. at 14 (quoting Myrick Decl. Ex. 7, at 5), and that "relevance is not the test."  Pl.'s Br. at 14.  However, NRDC misconstrues both the law and the record.

The Second Circuit has held, and this Court has recognized, that the agency "must be able to demonstrate that, *ex ante*, the document for which executive privilege is claimed *related* to a specific decision facing the agency."  August 30 Order, at 12 (quoting *Tigue*, 312 F.3d at 80) (emphasis added).  Moreover, EPA's *Vaughn* submissions show that the withheld portions of Document 1370 were pre-decisional and related to the agency's ongoing registration of chlorpyrifos, not merely because they were "relevant to ongoing discussions concerning chlorpyrifos," but because they: reflected a senior science advisor's "opinions regarding and characterizations of certain academic literature relevant to ongoing discussions concerning chlorpyrifos"; reflected the advisor's "back-and-forth discussion" with Dr. Beck, where the advisor "sought her input on which literature would be useful to inform decision-making concerning chlorpyrifos"; reflected Dr. Beck's "opinions concerning which additional studies would be useful to review"; and directly concerned "academic literature [that] would be most

5

useful for Nancy Beck to review to inform upcoming chlorpyrifos registration-related decisionmaking." Myrick Decl. Ex. 7, at 5.

In similar fashion, NRDC implies that EPA's description of Document 6761 was limited to stating that it "reflects 'information and opinions concerning a study related to chlorpyrifos,' at a time when the agency was also 'discussing issues related to the registration review of chlorpyrifos.'" Pl.'s Br. at 14–15 (quoting Myrick Decl. Ex. 7, at 6). But the agency's *Vaughn* submissions describe how the email was sent when "EPA employees and managers were still internally discussing the chlorpyrifos registration review," and the withheld portions of this e-mail chain reflect that: (1) the acting director of EPA's Office of Pesticide Programs was providing Dr. Beck "with information and opinions concerning a study related to chlorpyrifos"; and (2) the withheld portions of the email "reflects information recommendations and opinions concerning scientific literature that supported the Agency's overall decision-making process for the ongoing chlorpyrifos registration review." Myrick Decl. Ex. 7 at 6.

Together, Documents 1370 and 6761 were similar to other withheld records relating to the registration review of chlorpyrifos which this Court held were protected by the deliberative process privilege. *See* August 30 Order, at 22–23. As this Court held, "these records and the others like it were 'prepared in order to assist . . . agency decisionmaker[s] in arriving at [their] decision[s]' regarding the pesticide reviews, and thus predecisional; and they formed a link in a 'specified consultative process' and 'reflect[ed] advisory opinions, recommendations and deliberations comprising part of [the] process' for determining the outcome of the registration reviews, and thus deliberative." *Id.* at 23 (quoting *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)) (alterations in original). Accordingly, this Court should grant summary judgment to EPA as to these records.

**D.     Document 14043 Contains Protected Deliberations About a Core Agency Decision**

Document 14043 reflects deliberations among staff and managers in the Office of Chemical Safety and Pollution Prevention ("OCSPP") about whether specific records needed to be included in the rulemaking docket for the TSCA Framework Rules and contains staff-level opinions on how to interpret EPA regulations and guidance.  Myrick Decl. ¶ 18 & Ex. 7, at 2–3.  Without citing any relevant authority, NRDC wrongly dismisses the compilation of an administrative record underlying an agency rulemaking as "not an agency 'decision' for purposes of the deliberative process privilege."  Pl.'s Br. at 16.

NRDC disregards "the importance of notice and comment to regulatory proceedings," *NRDC v. EPA*, 676 F. Supp. 2d 307, 312 (S.D.N.Y. 2009), and its role as "a critical part of administrative rulemaking, which is itself central to the operations and activities of government agencies."  *New York Times Company v. FCC*, __ F. Supp. 3d __, 2020 WL 2097623, at *5 (S.D.N.Y. 2020).  As explained in the Agency's *Vaughn* submissions, EPA was required to finalize the TSCA Framework Rules by June 22, 2017.  Myrick Decl. ¶ 16.  These rulemakings were subject to the notice-and-comment provisions of the Administrative Procedure Act, which requires "general notice" of formal rulemakings through publication in the Federal Register, 5 U.S.C. § 553(b).

Here, NRDC claims that, because there are general standards governing the contents of an administrative record, internal deliberations about which documents to include in a record are not predecisional.  Pl.'s Br. at 16.  While *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006), for example, does state that an agency has limited discretion in terms of what goes into the administrative record, *Maritel* correctly acknowledges that compiling the administrative record involves decisions.  First, the agency must consider whether a record was "directly or indirectly considered" for the decision for which the administrative record is being

7

prepared. *Id*. The agency "may exclude arguably relevant information that is not contained in the agency's files but that may be available from third parties." *Id*. In addition, the agency "generally may exclude arguably relevant material that reflects internal deliberations." *Id*. This Court should therefore grant summary judgment as to Document 14043, because deliberations concerning the documents that belong in a rulemaking docket bear directly on the formulation or exercise of policy-oriented judgment and are protected by the deliberative process privilege.

E.   **EPA Has Demonstrated Harms From Disclosure**

Contrary to NRDC's assertions, EPA's descriptions of harms from disclosure are not "generic, boilerplate statements," but provide appropriate "context for the decisionmaking processes in question and the harms that would reasonably ensure from disclosure of the material." *See* August 30 Order, at 10. EPA explained how disclosure of Documents 26339, 14043, and 10238 will cause harm because OCSPP considered and evaluated regulatory options and policies relating to the TSCA Framework Rules that, if released, would not only discourage frank internal communications and deliberations about these rulemakings and subsequent implementation decisions, but would chill future internal deliberations about other rulemaking proceedings. Myrick Decl. ¶¶ 20–21 & Ex. 7, at 2–4. Disclosure would also cause public confusion about the rationales and reasons underlying the TSCA Framework Rules. *Id*. ¶ 21. EPA also explained how disclosure of the chlorpyrifos-related deliberations in Documents 1370 and 6761 would prematurely reveal proposed decisions and rationales in an ongoing pesticide registration review process before it is finalized, and lead the public to believe that those decisions and rationales were the actual grounds for the registration review (once finalized), even if they are not. *Id*. ¶ 25 & Ex. 7, at 5–6. Finally, EPA explained how releasing discussions of scientific literature in an ongoing registration review will discourage staff from offering candid assessments of academic material and scientific findings. *Id*. ¶ 26 & Ex. 7, at 5–6.

8

### F.     NRDC Is Not Entitled to *In Camera* Review of the Challenged Records

NRDC asks in the alternative that the Court conduct an *in camera* review of 89 records, specifically: (1) Documents 26339 and 10238 to determine whether they are really "messaging" records; and (2) the "5 second tranche records at issue" in this motion (Documents 26339, 10238, 1370, 6761, and 14043) as well as an undefined "subset" of 84 records, to confirm whether they contain reasonably segregable, non-exempt information.  Pl.'s Br. at 14, 20–21. The Second Circuit has adopted a "restrained approach" that permits *in camera* review "where the record showed the reasons for withholding were vague or where the claims to withhold were too sweeping of bad faith, or where it might be possible that the agency had exempted whole documents simply because there was some exempt material in them." *Halpern v. FBI*, 181 F.3d 279, 292 (2d Cir. 1999).  Where, as here, "the affidavit is sufficiently detailed to place the documents within the claimed exemptions, and where the government's assertions are not challenged by contrary evidence or a showing of agency bad faith, we have held that the district court should restrain its discretion to order *in camera* review." *Id.* (citing *Doherty v. U.S. Department of Justice*, 775 F.2d 49, 52–53 (2d Cir. 1985)).

EPA's efforts to carefully review and identify any segregable, non-exempt material and the disclosures that resulted from those reviews underscore the agency's good faith.  EPA conducted *two* segregability reviews of the 64 records in the agency's first *Vaughn* index, conducted a third review of a subset of the 64 records that NRDC asserted may contain segregable information, and disclosed segregable material in six records.  Myrick Decl. ¶¶ 5–6. In addition to the 64 records, EPA conducted a segregability review of the "second tranche" records, including the 10 records identified in the agency's draft *Vaughn* index that NRDC has declined to challenge on Exemption 5 grounds and the five records that are the subject of this motion.  *Id.* ¶ 14.  NRDC is wrong to assert that "EPA neglects to address the Court's *in camera*

9

review of a sample of 10 records . . . and the denial of summary judgment on the segregability issue," Pl.'s Br. at 19, because EPA affirmed that its segregability reviews specifically considered the August 30 Order's ruling on this issue. Myrick Decl. ¶ 7. EPA's *Vaughn* submissions are also sufficiently detailed to allow this Court to determine that Document Nos. 26339 and 10238 are "messaging" records which should be set aside until the resolution of EPA's pending Second Circuit appeal. *See id.* Ex. 7, at 1–2, 3–4. EPA's *Vaughn* submissions also sufficiently detail why the five records at issue in this motion are exempt from disclosure under Exemption 5 of FOIA. *See generally* Myrick Decl. & *id.* Ex. 7.

NRDC's request for *in camera* review of dozens of records rests on its theory that EPA's "disclosure of additional information from records over the past several months calls into question its claim that it has disclosed all reasonably segregable, non-exempt information at this time." Pl.'s Br. at 20. EPA has explained its discretionary determination that "the passage of time has reduced any potential harm from disclosure" of certain records that were produced. *See* Myrick Decl. ¶ 5. EPA stands by its sworn segregability assessment, and NRDC's "allegations are nothing more than speculation that there must be more documents which [the agency] has deliberately or negligently failed to produce," which are not sufficient to show that EPA acted in bad faith. *Grant Central Partnership,* 166 F.3d at 490. Finally, to the extent NRDC contends that *in camera* review is appropriate because there are only a "small number of documents at issue," *see* Pl.'s Br. at 21, the number of documents at issue "is not the only factor a court should consider," and "this factor alone is not an affirmative basis for conducting a review; it merely suggests that review may be less burdensome than in other circumstances." *Assadi v. USCIS*, 12 Civ. 1374 (RLE), 2015 WL 1500254, at *3 (S.D.N.Y. Mar. 31, 2016).

## CONCLUSION

For the foregoing reasons, defendant EPA respectfully requests that the Court grant summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, and deny NRDC's cross-motion for summary judgment.

Dated: June 5, 2020
      New York, New York

                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York
                                          *Attorney for Defendant EPA*

By:      */s/ Tomoko Onozawa*
            TOMOKO ONOZAWA
            Assistant United States Attorney
            86 Chambers Street, 3rd Floor
            New York, New York 10007
            Tel.:   (212) 637-2721
            Fax:   (212) 637-2686
            E-mail: tomoko.onozawa@usdoj.gov