# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL,<br><br>          Plaintiff,<br><br>     v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>          Defendant. | Civil Action No. 17-cv-5928 (JMF) |

**PLAINTIFF NATURAL RESOURCES DEFENSE COUNCIL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Rachel L. Fried
David C. Vladeck
Georgetown University Law Center
Civil Litigation Clinic
600 New Jersey Avenue, NW
Washington, D.C. 20001
Tel: (202) 662-9540
Fax: (202) 662-9444
Email: rachel.fried@georgetown.edu

*Attorneys for Plaintiff*
*Natural Resources Defense Council*

Plaintiff Natural Resources Defense Council ("NRDC") respectfully submits this reply memorandum in further support of NRDC's Cross-Motion for Summary Judgment.

## I.  ARGUMENT

Defendant U.S. Environmental Protection Agency ("EPA") argues in its opposition and reply brief of June 5, 2020 ("EPA Reply Br.") that it may withhold a record pursuant to Exemption 5 of FOIA and the deliberative process privilege so long as the record is related or relevant to some ongoing agency policymaking decision.  *See* EPA Reply Br. at 5.  But relevance is not the test.  Rather, the record must have been "specifically prepared for use by" the agency to aid in arriving at a particular policymaking decision.  *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002); *see also Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (agency must show that a record was "prepared in order to assist an agency decisionmaker in arriving at his decision").  EPA has failed to show that the second tranche records at issue are both predecisional and deliberative for the reasons set forth in NRDC's brief of May 4, 2020 ("NRDC Br.").  NRDC makes a number of additional points in reply to EPA's Reply Brief below.

### A.  The Court should decide whether EPA has shown that Document Nos. 26339 and 10238 are privileged.

"Messaging" records "reflect[] internal deliberations by EPA staff about how the agency should communicate its *policies* to people outside the agency."  Opinion and Order of August 30, 2019, ECF No. 57, at 16 (emphasis added) ("August 30 Order").  Although EPA asserts in its *Vaughn* index that Document Nos. 26339 and 10238 reflect preparations for communicating with outside entities, the substance of those communications did not concern, according to EPA's assertions, policy decisions themselves.  *See* EPA *Vaughn* index at 1-2, 3-4.  Document Nos. 26339 and 10238 are therefore not evidently messaging records as defined in the August 30

Order.  Because these records do not appear to be messaging records, their exempt status will not

be affected by EPA's pending Second Circuit appeal, and the Court should determine whether

they are exempt.

In contending that Document No. 26339 is a messaging record, EPA likens it to

Document No. 5427, a record which EPA asserts the Court held was a "'messaging decision.'"

EPA Reply Br. at 2.  But this comparison fails at the threshold.  Despite EPA's assertion to the

contrary, the Court found that Document No. 5427 was a non-exempt "briefing" record.  August

30 Order at 22-23, 38 (including Document No. 5427 in the discussion of "Briefing Documents"

and categorizing that record as "Briefing (TSCA Framework Rules)" rather than "Messaging").

Because Document Nos. 26339 and 10238 do not appear to be messaging records, they should

not be "set aside" until EPA's pending appeal on that issue is resolved.  *See* EPA Reply Br. at 1-

2.

Nor is it NRDC's burden to prove that Document Nos. 26339 and 10238 are not

messaging records, or to show that EPA's indecision over how to categorize these records was

unjustified.  NRDC only noted in its brief that the records are not evidently messaging records,

and that EPA failed to tell NRDC that EPA would re-categorize the records as messaging records

by the court-ordered deadline of January 21, 2020.  NRDC Br. at 13-14.  Because EPA's *Vaughn*

index does not establish that these records are exempt, *see* NRDC Br. at 11-14, the Court can and

should order them disclosed.  If there is any doubt about whether these two records are

messaging records, an *in camera* review will enable the Court to make that determination.

**B.  EPA fails to justify the "material change[]" to its draft *Vaughn* index entry for Document No. 26339.**

As contemplated by the parties, EPA made several edits to its "draft" *Vaughn* index with

respect to all five second-tranche records at issue.  *Compare* Tallman Decl. Ex. 3, ECF No. 95-3,

*with* EPA *Vaughn* index.  But EPA did not merely "'add[] factual support'" to its draft justification for withholding portions of Document No. 26339.  *See* EPA Reply Br. at 4.  Rather, as NRDC described in its brief, EPA made a "wholesale, material change[]" to its initial justification for withholding portions of that record—despite EPA's representation that it would not do so.  *See* Joint Letter of Jan. 27, 2020, ECF No. 82, at 4; NRDC Br. at 12-13.

EPA's "draft" *Vaughn* index characterized Document No. 26339 as one that merely "concerns the TSCA Framework Rules" and that was prepared for the purpose of an upcoming meeting with a representative of Chemours Company.  Tallman Decl. Ex. 3 at 24.  Although EPA observed in its "draft" *Vaughn* entry that "underlying policy issues [are] raised by those meetings," *id.*, it made no effort to tie that the record to a particular policymaking decision.  As NRDC explained in its brief, EPA made new assertions in its "final" *Vaughn* index in an apparent—albeit unsuccessful—attempt to connect the purpose of Document No. 26339 to the TSCA Framework Rules rulemaking process.  *See* EPA *Vaughn* index at 2; NRDC Br. at 12-13.

Although EPA acknowledges the revisions regarding Document No. 26339, it leaves unanswered NRDC's point that the changes for that record were "material," and it ignores the prejudice to NRDC that results when EPA takes, without the Court's permission, a second chance to tailor a withholding justification that NRDC challenged as insufficient.  *See* EPA Reply Br. at 3-4.  In any case, even EPA's final *Vaughn* index fails to show that Document No. 26339 is protected by the deliberative process privilege.  *See* NRDC Br. at 11-13.

**C.  EPA fails to show that Document Nos. 1370 and 6761 are predecisional or deliberative.**

For the reasons set forth in NRDC's Brief, EPA fails to show that Document Nos. 1370 and 6761 are deliberative or predecisional to the chlorpyrifos registration review decision.  *See* NRDC Br. at 14-16.  EPA argues that these two records are "similar" to other records regarding

3

the chlorpyrifos registration review that the Court held were protected by the deliberative process privilege. EPA Reply Br. at 6 (citing August 30 Order at 22-23). Once again, comparing EPA's *Vaughn* submissions for the respective records only underscores EPA's inability to show that Document Nos. 1370 and 6761 were prepared specifically to facilitate EPA's chlorpyrifos registration review decision. EPA points to records discussed in the August 30 Order, but those records reflect deliberations about a particular policymaking decision. For example, Document No. 26227 contains "pre-decisional deliberations between two senior managers about the registration review process for glyphosate and other pending pesticides review actions." *Vaughn* index I, ECF No. 36-1, at 77.

By comparison, EPA does not assert in its *Vaughn* index that Document Nos. 1370 and 6761 reflect deliberations about the chlorpyrifos registration review decision. Rather, EPA asserts that the records reflect discussion about academic literature or studies on chlorpyrifos. That some of the literature may "support[] the Agency's overall decisionmaking process for the ongoing chlorpyrifos registration review," *Vaughn* index at 6, is of no moment. It does not follow from the facts that a study concerned chlorpyrifos and that the study was consistent with the agency's approach that all agency communications concerning that study were prepared to assist in the policy decision concerning the chlorpyrifos registration review and are exempt from disclosure. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). Were the deliberative process privilege to extend to these records, then any agency record relating to the chemical chlorpyrifos that is created during the same years-long span of time as the registration review would be exempt, no matter how "peripheral to actual policy formation" it is. *See id.*

### D.  EPA fails to show that Document No. 14043 is predecisional or deliberative.

EPA's contention that Document No. 14043 is exempt because compiling an administrative record "involves decisions," EPA Reply Br. at 7, is misguided. Not every

decision is deliberative for purposes of FOIA's exemptions.  As this Court repeatedly observed, only deliberations regarding "substantive" policymaking decisions are protected by the deliberative process privilege.  *See* Aug. 30 Order at 16, 17, 20, 21.  Compiling an administrative record is the antithesis of discretionary action or policy formation—the agency's decisions must adhere to a settled body of law that guides the agency's process, as EPA acknowledges.  *See* EPA Br. at 7 (citing *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188 (D.D.C. 2006)); *see also* NRDC Br. at 16-17.  A "decision" about whether the agency in fact "directly or indirectly considered" a record during a rulemaking, EPA Reply Br. at 7-8, is a factual inquiry about what documents the agency reviewed, not a policy-oriented judgment.  Nor does EPA assert that Document No. 14043 reflects deliberations about any other discretionary or policy decisions.

Finally, contrary to EPA's far-fetched contentions, EPA Reply Br. at 7, disclosing an email regarding the compilation of an administrative record would not jeopardize the notice and comment rulemaking process.  The importance of notice and comment, and the cases EPA cites to that effect, are irrelevant to the question here: namely, whether EPA has shown that Document No. 14043 is protected by the deliberative process privilege.  For the reasons stated in NRDC's Brief and above, EPA has not done so.

**E.  EPA has not adequately shown that disclosure of the withheld portions of records would foreseeably harm its deliberative process.**

To meet FOIA's foreseeable harm standard, 5 U.S.C. § 552(a)(8)(A)(i), EPA must make more than boilerplate assertions that disclosure of the withheld portions of records would chill speech within the agency.  Rather, EPA must "sufficiently explain how [these] *particular* Exemption 5 withholding[s] would harm the agency's deliberative process."  Memorandum

Opinion and Order of July 25, 2019, ECF No. 53, at 2 (emphasis in original) (internal quotation omitted).  EPA has failed to do so.

EPA tries to shoehorn records that have no evident connection to the Framework Rules rulemaking into EPA's assertions of foreseeable harm.  Document Nos. 26339, 14043, and 10238 relate to an upcoming Congressional budget hearing, a meeting with a chemical company, and compiling the administrative record for the Framework Rules.  Although EPA argues generally that disclosure of records reflecting deliberations about the Framework Rules rulemaking could harm the agency's deliberative process, *see* Myrick Decl. ¶¶ 20-22, it has wholly failed to show that disclosure of *these records* would chill discussion in a way that foreseeably harms the agency's *deliberative process*.  EPA thus fails to establish a "link" between harm to its deliberative process "and the specific information contained in the material withheld."  *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F.Supp.3d 93, 100, 101 (D.D.C. 2019).  EPA likewise fails to establish a link between the information in Document Nos. 1370 and 6761 and foreseeable harm to its deliberative process with respect to the chlorpyrifos registration review decision.  *See* Myrick Decl. ¶¶ 25-26.

EPA also argues that it has shown that disclosure of the records would cause public confusion about official agency policy.  EPA Reply Br. at 8.  This argument is unconvincing. There is no basis for EPA's claim that anyone would mistake the information in these records— which relate, for instance, to meetings with stakeholders or academic literature—for an alternative ground for a final rule.  Indeed, despite EPA's characterization in its Reply Brief, it has asserted only that the withheld portions of records "could" be misconstrued as official policy. Myrick Decl. ¶ 22; *see also id.* ¶ 25 ("[S]cientific deliberations that are prematurely released *could* be misconstrued as the Agency's definitive view of the review process." (emphasis

added)).  Assertions that disclosure of the records "could" harm the agency's deliberative process are insufficient, because FOIA "requires more than speculation."  *Judicial Watch*, 375 F. Supp. 3d at 101 ("The question is not whether disclosure *could* chill speech, but rather if it is reasonably foreseeable that it *will* chill speech . . . ." (emphases added)).

F.  ***In camera* review of the five second-tranche records and a subset of other records is appropriate.**

EPA misstates the scope of NRDC's *in camera* review request.  NRDC does not seek, as EPA claims, *in camera* review of "89 records" or of "dozens of records."  EPA Reply Br. at 9, 10.  Rather, NRDC requests *in camera* review of the five second-tranche records to the extent the Court determines it is necessary.  NRDC Br. at 20-21.  In addition, NRDC requests that the Court review *in camera* a *subset* of 74 records to ensure that EPA has released all reasonably segregable, non-exempt information in those records.  NRDC Br. at 21.  The number of records in that subset NRDC leaves to the Court's discretion.  A sample of no more than 10 of the 74 records would be necessary to determine whether EPA has complied with FOIA's disclosure requirements.  *In camera* review is particularly warranted here for the reasons set forth in NRDC's Brief.  NRDC Br. at 5-8, 20-21.

EPA attempts to justify its series of disclosures of second tranche records by stating that "'the passage of time has reduced any potential harm from disclosure' of certain records."  EPA Reply Br. at 10 (quoting Myrick Decl. ¶ 10).  But it is far from clear how this statement explains EPA's relatively few disclosures of the 64 first-tranche records.  For one thing, neither EPA's Reply Brief nor its disclosure cover letters state whether EPA still considers the disclosed records to be protected by the deliberative process privilege.  *See, e.g.*, Myrick Decl. Ex. 5 ("The Agency has identified additional segregable, non-exempt material for release that is now being produced.  In some cases, the Agency is making a discretionary release of information in light of

the passage of time since the initial withholding which has resulted in reduced harm from disclosure.")  Nor does EPA state which of the records were released because of the "passage of time" and which were released for other reasons.  In any case, EPA's "passage of time" explanation fails to account for the glaring discrepancy between the high proportion of second tranche records it disclosed and the low proportion of records it disclosed from the set of 64 records that it was ordered to re-review for segregable, non-exempt information.

## II.  CONCLUSION

For the reasons stated above and in NRDC's memorandum of law in support of its cross-motion for summary judgment, this Court should grant NRDC's cross-motion for summary judgment and deny EPA's second motion for summary judgment.

Respectfully submitted,

/s/ Rachel L. Fried
Rachel L. Fried
David C. Vladeck
Georgetown University Law Center
Civil Litigation Clinic
600 New Jersey Avenue, NW
Washington, D.C. 20001
Tel: (202) 662-9251
Fax: (202) 662-9634
Email: rachel.fried@georgetown.edu

*Attorneys for Plaintiff*
*Natural Resources Defense Council*

Dated: June 22, 2020